# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3916-16T1

G.H., IV,[1]

      Plaintiff-Appellant/
      Cross-Respondent,

v.

C.H.,

      Defendant-Respondent/
      Cross-Appellant.

_____

      Argued September 17, 2018 – Decided October 25, 2018

      Before Judges Gooden Brown and Rose.

      On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FM-04-0262-16.

      D. Ryan Nussey argued the cause for appellant/cross-respondent (Klineburger & Nussey, attorneys; D. Ryan Nussey and Carolyn G. Labin, on the brief).

---

[1] We use initials to protect the privacy of the parties.

Patricia M. Ronayne argued the cause for respondent/ cross-appellant (Patricia Ronayne, PC, attorneys; Alexandra J. Gitter, on the brief).

PER CURIAM

Following a five-day trial in the Family Part, plaintiff G.H., IV, appeals from a March 6, 2017 decision, which was incorporated in a March 26, 2017 amended dual final judgment of divorce. Plaintiff also appeals from two post-judgment orders denying his motions for reconsideration and a stay, and awarding counsel fees to his former wife, defendant, C.H.[2] In particular, plaintiff challenges the trial court's designation of defendant as the parent of primary residence (PPR), and reduction of his parenting time, arguing there is insufficient evidence in the record to support the court's decision. Plaintiff also claims the court's fee determination failed to consider the factors set forth in Rule 5:3-5. Having considered the contentions of plaintiff in light of the applicable law, we affirm the trial court's decision designating defendant the PPR, but reverse and remand that part of the decision regarding parenting time, and its orders awarding counsel fees.

---

[2] Defendant's notice of cross-appeal designates the April 27, 2018 order, and seeks modification of her counsel fee award. However, defendant's merits brief only requests "counsel fees for legal services rendered on appeal [and] will be filed by way of a motion under Rule 2:11-4." Because that rule provides for post-appeal relief, defendant's cross-appeal is denied as premature.

I.

We discern the pertinent facts and procedural history from the trial record. The parties were married in 2010. Two children were born of the marriage: G.H., V, born in 2011, and A.H., born in 2013. Following a domestic dispute in August 2015, the parties separated and filed temporary restraining orders against each other. After plaintiff filed a complaint for divorce, the parties executed a consent order dismissing their respective domestic violence actions and entering civil restraints. The consent order also established an interim shared parenting plan, providing plaintiff with eight overnight visits in a two-week period. During the highly contentious divorce proceedings that followed, the parties filed various applications regarding parenting time.

Trial was held on five non-consecutive days from October 5, 2016 to December 13, 2016. Because economic mediation resolved the parties' alimony and equitable distribution issues, trial was limited to the issues of child custody and parenting time. Plaintiff and his mother testified on plaintiff's behalf; defendant and the parties' joint custody expert, Dr. Ronald S. Gruen, Ed.D., testified on defendant's behalf. Documents admitted in evidence included Dr. Gruen's report, and emails and text messages between the parties.

3

Dr. Gruen's testimony was consistent with his twenty-two page report dated February 24, 2016. He found that the children were doing well and were psychologically bonded to both parents. Although plaintiff was "very affectionate" and "comfortable and capable in the caretaking role[,]" Dr. Gruen noted his concerns that plaintiff was "too attached to his mother and too easily influenced by her negative views of [defendant]." Conversely, defendant was improving "as a result of her ongoing therapy; her separation and individuation from her husband; and her growing maturity."

Dr. Gruen also found significant the differences in the party's perceptions of each other. For example, plaintiff "portray[ed] himself as an excellent parent and [defendant] as a poor one." Conversely, defendant expressed her willingness to remain in New Jersey [although her family resides in Massachusetts] and raise the children near their father. She was "more flexible and does not make up her mind so abruptly[, . . . which] is important when you [a]re raising kids."

Dr. Gruen recommended defendant as PPR, with "more than [fifty] percent of the time . . . maybe [eight] out of [fourteen] days," but plaintiff "should have significant time as well." To support that determination, Dr. Gruen opined that defendant would not attempt to undermine plaintiff's role or

4

influence over his children. Conversely, Dr. Gruen believed that designating plaintiff as PPR would "sideline [defendant] as the functional mother of the children." Dr. Gruen also noted that defendant was more insightful and sensitive to "what [was] good for the kids[,]" while plaintiff was "more sensitive in terms of his own feelings being hurt." Further, defendant's work schedule was more flexible than that of plaintiff, who relied on his mother for assistance with the children's appointments and other responsibilities.

The parties testified at length regarding their parenting roles. Notably, although defendant initially agreed with Dr. Gruen's recommendations, she sought sole custody at trial because it would be more consistent for the children. Her position as to plaintiff's visitation was, "One overnight per week and every other weekend" because of her difficulty in communicating with plaintiff.

At the conclusion of testimony on December 13, 2016, the trial court reserved decision, permitting the parties to submit written summations. The court also entered an order dissolving the civil restraints, and establishing parenting time for that year's Christmas holiday. Two months later, the parties returned to court pursuant to defendant's order to show cause raising parenting time concerns. The trial court entered an order on February 16, 2017, affording

5

defendant missed parenting time, and requiring the parties to attend co-parenting counseling.

On March 6, 2017, the court issued a thorough nineteen-page written opinion, considering the expert and lay witness testimony adduced at trial. Pertinent to this appeal, the court awarded the parties joint legal and physical custody of the children, designating defendant as the PPR and plaintiff as the parent of alternate residence. The court granted plaintiff parenting time on alternate weekends "from Saturday morning to Monday morning and one overnight every Wednesday," for a total of four overnights in a two-week period.

In its determination, the trial court recognized both parties "are fit parents and have established relationships with the children[,]" and "both children are excelling" despite "medical and developmental challenges." However, the court found "at this [time], a split parenting arrangement is not in the best interest of the children, as the parents have a contentious relationship and are unable to communicate effectively." In particular, the court cited the parties' "tumultuous relationship" and that they "struggle to communicate and agree upon the most basic of parenting decisions." Nonetheless, the court determined that "[p]laintiff will have reasonable and liberal visitation with the children."

A-3916-16T1

In rendering its decision, the trial court "relied, in part" on Dr. Gruen's custody evaluation. Analyzing the factors set forth in N.J.S.A. 9:2-4, the court accepted Dr. Gruen's opinion that defendant was more "willing to cooperate and communicate as necessary" with plaintiff, and more willing to accept his parental role. Conversely, plaintiff continuously criticized defendant and "minimize[d] her role as mother." The court recognized that the children were bonded with both parents, but accepted Dr. Gruen's opinion that plaintiff's temperament and inability to understand personality differences did not bode well for the children as they "get older and begin to assert their individual personalities."

The trial court next considered the parties' history of domestic violence. Although the parties had filed temporary restraining orders against each other at the inception of the divorce proceedings, the court found that neither party "sufficiently established a pattern of domestic violence for purposes of custody." Nor did the court find "any allegations or concerns of abuse of the children by either parent."

Addressing the needs of the children, the court recognized that defendant's work schedule afforded her more flexibility than plaintiff's "hectic work schedule" to address A.H.'s developmental delays. The court also credited Dr.

Gruen's opinion that both parties provided a stable and appropriate home for the children, and that they lived in close proximity to each other, which "will ensure that [p]laintiff will easily access the children for his designated parenting time and for other arrangements as designated by the [p]arties."

With regard to the extent and quality of the time spent with the children, the court found that, although defendant worked long hours prior to separation, she is now in a "superior position to spend time with the children than [p]laintiff" because she is able to work from home two to three days per week. Conversely, plaintiff travels to work five days per week.

Plaintiff thereafter filed a motion for reconsideration of the court's designation of defendant as PPR, and the reduction in his parenting time. In particular, plaintiff contended the trial court deviated from Dr. Gruen's recommendation without providing a basis for doing so. Further, at trial the parties agreed with Dr. Gruen that the children were doing well under the parenting time schedule set forth in the consent order, which afforded plaintiff eight overnights. During oral argument on April 26, 2017, the trial court acknowledged the fitness of both parties as parents, but concluded the children "would be doing better[] if we modified the parenting plan."

The trial court also granted, in part, defendant's cross-motion seeking enforcement of certain provisions of the court's decision and counsel fees. Relevant, here, the court awarded defendant $1,200, representing half of the counsel fees claimed for her cross-motion to enforce litigant's rights. The court afforded plaintiff two days to provide proof of his inability to pay the fee. On the return date, plaintiff submitted a pay stub for $1,663 but claimed he only retained $295 of his net pay after bills and expenses. Following the court's inquiry regarding other available funds, the court ordered plaintiff to withdraw money from his IRA account to pay defendant's counsel fees. In addition, the trial court increased the counsel fee award from $1,200 to $1,600, based on defense counsel's representation that her fee for appearing in court on that day would "probably be $354." This appeal followed.

## II.

The scope of our review of trials in the Family Part is particularly limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12. "Because a trial court hears the case, sees and observes the witnesses, [and] hears them testify, it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Id. at 412

(alteration in original) (internal quotation marks omitted). We accord particular deference to the judge's factfinding because of "the family courts' special jurisdiction and expertise in family matters." Id. at 413.

However, when "the focus of the dispute is . . . alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom, the traditional scope of review is expanded." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (alteration in original) (internal quotation marks omitted). "Still, even in those circumstances we will accord deference unless the trial court's findings went so wide of the mark that a mistake must have been made." Ibid.

In custody and visitation cases, the court's primary consideration is the best interests of the child. Sacharow v. Sacharow, 177 N.J. 62, 80 (2003); Kinsella v. Kinsella, 150 N.J. 276, 317 (1997); D.A. v. R.C., 438 N.J. Super. 431, 450 (App. Div. 2014); Faucett v. Vasquez, 411 N.J. Super. 108, 118 (App. Div. 2009). "Custody issues are resolved using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2–4(c)." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). The statute requires that

> [i]n making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in

matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

[N.J.S.A. 9:2–4(c).]

We review a custody award under an abuse of discretion standard, giving deference to the court's decision provided that it is supported by "adequate, substantial, and credible evidence" in the record. Cesare, 154 N.J. at 412. "[T]he decision concerning the type of custody arrangement [is left] to the sound discretion of the trial court[.]" Nufrio v. Nufrio, 341 N.J. Super. 548, 555 (App. Div. 2001) (second and third alteration in original) (quoting Pascale v. Pascale, 140 N.J. 583, 611 (1995)). Therefore, on appeal "the opinion of the trial judge in child custody matters is given great weight." Terry v. Terry, 270 N.J. Super. 105, 118 (App. Div. 1994).

Our review of the record demonstrates the evidence supports the trial court's decision designating defendant as PPR. The court conducted an extensive evaluation of the applicable factors set forth in N.J.S.A. 9:2-4, emphasizing the discord between the parties, but recognizing defendant's ability to put aside the conflict for the best interests of the children. We therefore find the trial court did not abuse its discretion in designating defendant the PPR.

We part company, however, with the trial court's determination regarding plaintiff's parenting time. Although it is well-settled that a factfinder is free to accept or reject, in full or in part, the opinions of qualified experts, City of Long Branch v. Liu, 203 N.J. 464, 491 (2010); Brown v. Brown, 348 N.J. Super. 466, 478 (App. Div. 2002); Model Jury Charges (Civil) 1.13, "Expert Testimony" (approved April 1995), the trial court did not explain its reasons for deviating from Dr. Gruen's opinion. Rather, during its oral decision on reconsideration, the court claimed it had "found . . . the children were not doing well." That explanation does not, however, find support in the record. Instead, as noted, the parties and Dr. Gruen all consistently testified the children were doing well.

Accordingly we are constrained to reverse and remand the court's decision regarding parenting time. On remand, the trial court may seek an updated evaluation and allow limited testimony from the parties and the expert regarding

a suitable parenting time schedule. The court shall then fully explain its reasons for either adhering to or modifying the existing schedule, in the children's best interests. R. 1:7-4(a); N.J.S.A. 9:2-4(c). We express no opinion with respect to that schedule.

III.

We next consider plaintiff's argument concerning the court's counsel fee award. In particular, he contends the trial court failed to consider the factors set forth in Rule 5:3-5, and that the court erred in requiring him to pay counsel fees by drawing funds from his IRA account.

In Family Part matters, Rule 5:3-5(c), Rule 4:42-9(a), N.J.S.A. 2A:34-23, and interpretative case law "clearly outline necessary considerations when imposing a counsel fee award." Ricci v. Ricci, 448 N.J. Super. 546, 580 (App. Div. 2017) (citing Mani v. Mani, 183 N.J. 70, 94-95 (2005)). In exercising its discretion, the trial court must abide by N.J.S.A. 2A:34-23, requiring consideration of "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." Mani, 183 N.J. at 94 (quoting N.J.S.A. 2A:34-23). Rule 5:3-5(c), in turn, requires the trial court to consider the following factors when determining an award of counsel fees:

In determining the amount of the fee award, the court should consider, in addition to the information required to be submitted pursuant to R[ule] 4:42–9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[Ibid.]

Therefore, when considering a counsel fee application, the motion court

must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.

[Mani, 183 N.J. at 94-95.]

If the court performs its obligation under the statute and rules, and there is "satisfactory evidentiary support for the trial court's findings, 'its task is complete and [a reviewing court] should not disturb the result, even though it . . . might have reached a different conclusion were it the trial tribunal.'" Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (quoting Beck v. Beck, 86

14

N.J. 480, 496 (1981)). Conversely, a remand is appropriate if the trial court fails to adequately explain an award or denial of counsel fees. See Giarusso v. Giarusso, 455 N.J. Super. 42, 54 (App. Div. 2018); Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002).

Here, the trial court initially divided in half defendant's counsel fee request for her motion to enforce litigant's rights, then added an additional sum for fees related to the return date, without analyzing the factors set forth in Rule 5:3-5(c), Rule 4:42-9(a), and N.J.S.A. 2A:34-23. Although all factors should have been analyzed, particularly relevant here is defendant's financial need in view of her attorney's representation that her parents have paid her counsel fees. See Mani, 183 N.J. at 94-95; see also Rule 5:3-5(c)(2).

We therefore reverse the fee award and remand to the trial court for further proceedings consistent with this opinion. We express no opinion as to the appropriate fee award, if any. Because we reverse the award, we need not reach plaintiff's contention that the court erred in ordering payment from his IRA account. Nor do we decide defendant's cross-appeal for counsel fees regarding legal services rendered in connection with the present appeal. As we noted above, that application is premature.

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3916-16T1